## Norris *v.* Watson.

A growing crop of grass is not liable to be attached in mesne process.

TRESPASS, for breaking and entering the plaintiff's close in Pittsfield, and cutting down and carrying away thirty loads of his grass.

It appeared by the pleadings that the defendant, being then a deputy of the sheriff of Merrimack county, had in his hands, for service, two writs of attachment against the plaintiff; one in favor of William P. Raymond, the other in favor of Jonathan Dudley; and on the 8th day of July, 1850, entered on the plaintiff's close and attached, on the writs, the grass growing there, and left with the town clerk of Pittsfield, copies of the writs and of the returns of the attachment.

It further appeared by the agreement of the parties, that the defendant, having these writs in his hands, entered on the plaintiff's land and cut and carried away the grass growing there, but made no return on the writs, except of the original attachment.

It was agreed that, if the Court should be of opinion that the defendant, on this statement of facts, was a trespasser, an auditor should be appointed to assess the damages, and the plaintiff should have judgment for the amount; otherwise, that this case should be discharged, and the cause stand for trial.

*Bellows*, for the plaintiff. At common law, sheaves of corn

and hay in a barn could not be distrained or seised on execution. *Bond* v. *Ward*, 7 Mass. 129 ; *Barrett* v. *White*, 3 N. H. Rep. 223.

By Stat. Wm. and Mary, chap. 5, and Stat. 11, Geo. II., chap. 19, such property has been made subject to distress; and corn, when ripe, may be separated from the freehold. *Barrett* v. *White*, 3 N. H. Rep. 223. And what is done by statute in England, is done here by immemorial usage. *Barrett* v. *White*, 3 N. H. Rep. 223 ; *Penhallow* v. *Dwight*, 7 Mass. 34.

But neither the statutes in England, nor the usage in this country, extend so far as to subject unripe or growing grain or grass to distress or execution.

An actual seisure is necessary to a valid attachment of goods, and this could not be made of a growing crop. *Dunklee* v. *Fales*, 5 N. H. Rep. 528. And the provisions of the Revised Statutes, chap. 184, § 4, do not apply to growing crops.

The attachment of growing grain would come within the principle of *Bond* v. *Ward*, 7 Mass. 123, and *Wildes* v. *Blanchard*, 7 Vermont, 138.

Growing grass is part of the freehold. *Crosby* v. *Wardsworth*, 6 East, 602. So as to grain. *Moore* v. *Ross*, 11 N. H. Rep. 547 ; 2 Stark. Ev. 598. So in respect to growing trees. *Putney* v. *Day*, 6 N. H. Rep. 430 ; *Olmstead* v. *Niles*, 7 N. H. Rep. 522.

Grass, not being the product of annual cultivation, is not emblements, and goes to the heir. 2 Black. Com. 122; Toller on Ex. 193, 194; 4 Kent's Com. 73 ; *Penhallow* v. *Dwight*, qua supra ; *Miller* v. *Baker*, 1 Metcalf, 27.

In *Whipple* v. *Foot*, 2 Johns. Rep. 417, stress is laid on the fact that the land did not belong to the owner of the wheat attached, and the fact that the wheat was unripe does not seem to have been much considered.

*Emerson*, for the defendant, contended, that the Revised Statutes, chap. 133, § 1, authorizing the mortgage of growing crops as personal property, and chap. 184, § 15, providing for the attachment of personal property subject to mortgage, had made

31 *

growing crops liable to attachment in mesne process, even if they were not liable before.

PERLEY, J. The case finds that the defendant on the 8th of July, 1850, entered into the plaintiff's close and made an attachment of the grass growing there; that on the 26th of the same month, he cut and carried the grass away. He also attached the grass by leaving copies as in the attachment of real estate.

The gist of the action is the breaking and entering; but if the defendant had a right to make the attachment, he had of course the right to enter on the land in a reasonable way for the purpose of making it, and might justify the entry under his process. The question then, is, whether the growing grass was liable to attachment.

The grass was taken on the 8th of July, and kept and detained from the plaintiff till the 26th of the same month, when it was cut and carried away. If the grass was illegally taken and detained from the 8th to the 26th of the month, it would be no defence to show that the crop was mature and liable to attachment at the end of that period.

The possession, and the exclusive possession, of the land, was necessary to assert the right which the defendant claimed. He could not keep the growing crop fenced and protected until it should ripen, without exclusive possession. If the possession, which he took and kept, had been legal and rightful, it would have been sufficient to maintain trespass *quare clausum fregit*, against a stranger, or against the owner himself, if he had entered in a way to disturb the defendant's right. *Crosby* v. *Wadsworth*, 6 East, 602.

The attachment required that the officer should take and keep the whole beneficial interest in the land during the time necessary to mature the crop. If he could, for that purpose, legally hold possession eighteen days, the law can fix no limit that would prevent him from holding it for any indefinite time that might be necessary to make the attachment effectual. The officer might in this way become in substance tenant of the land under

color of authority to attach personal property, though the law does not permit him by a direct attachment of the land in mesne process to intermeddle at all with the possession.

The case of *Whipple* v. *Foot*, 2 Johns. Rep. 418, may have been put, partly on the ground that a growing crop of wheat would go to the executor, and not to the heir, and was therefore liable to be taken in execution as personal property. But if it is to be taken as a case in point for the defendant, it is out-weighed and controlled by the authorities cited for the plaintiff.

We cannot think that the provisions of the Revised Statutes, authorizing the mortgage of growing crops as personal property, and the attachment of personal property subject to mortgage, were intended to make any change in the law relating to the attachment of growing crops.

The 15th section of the 184th chapter, which provides for the attachment of personal property subject to mortgage, is limited in its operation by the terms of the statute to " property not exempt from attachment." If growing crops, therefore, were exempt from attachment, they are excluded by the exception from the operation of the statute.

In the case of certain enumerated kinds of property, the 14th section of the same chapter provides that the officer may pre-serve an attachment without actual possession, by leaving copies of his writ and return with the town clerk, as where lands are attached. The statute names, " grain unthreshed, hay, or pota-toes," &c., but makes no mention of growing crops, which would fall peculiarly within the reason of the enactment, and could hardly have been omitted, if the legislature had understood that they were liable to attachment.

An auditor must be appointed to assess the damages, accord-ing to the agreement stated in the case.